**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 26-cr-0002 (RBW)** |
| | : | |
| **v.** | : | |
| | : | |
| **WESLEE WILKINSON,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, respectfully recommends that the Court sentence the defendant to a period of 13 months of incarceration, which is at the mid-range of the applicable guidelines range. In support of its recommendation, the United States relies on the following points and authorities, and any other such points and authorities that it may cite at a hearing.

## BACKGROUND

1. The defendant acknowledged as part of his guilty plea in this case that on September 21, 2025, while operating a vehicle in the 4500 block of Benning Road, Southeast, D.C., he was stopped by members of the Metropolitan Police Department (MPD) for multiple traffic infractions. After officers approached the vehicle, the defendant was observed with an open container of alcohol in between his leg and the center console. The defendant was asked to step out of the vehicle, at which time he was placed under arrest for possession of an open container of alcohol. A search of his person incident to arrest resulted in the seizure of a 9mm Smith and Wesson M&P Shield semi-automatic pistol with a Polymer 80 lower receiver bearing no serial

1

number. The firearm was loaded with seven rounds of 9mm ammunition, including one round in the chamber.

2.      The defendant admitted that at the time he possessed the loaded 9mm semi-automatic pistol, he had previously been convicted of an offense for which the penalty was greater than one year of imprisonment, to wit, Carrying a Pistol Without a License Outside the Business or Home in D.C. Superior Court, Criminal Case No. 20202-CF3-005613. Defendant further admitted that at the time he possessed the 9mm pistol and ammunition, he was aware that he had a previous conviction for an offense in which the penalty was greater than one-year of imprisonment, that the firearm he possessed had been shipped or transported from one state to another and that it was capable of expelling a projectile by means of an explosive.

3.      On January 7, 2026, the defendant entered a plea of guilty to a one-count information, which charged him with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. §§ 922(g)(1). The statutory penalty for the offense of conviction is a maximum term of imprisonment of 15 years, a fine of not more than $250,000, and a term of supervised release of not more than 3 years.

### SENTENCING GUIDELINES

4.      The government agrees with the Pre-Sentence Report ("PSR") calculation of the defendant's criminal history as falling within Criminal History Category I. PSR ¶ 25. The government further agrees that the base offense level is 14 and that the defendant should receive a two-level reduction for acceptance of responsibility. Id. at ¶ 27, 29. Accordingly, the government agrees that the total offense is 12. id. at ¶ 31. Based upon a total offense level of 12 and a Criminal

History Category of I, the Sentencing Guidelines range of imprisonment is 10 months to 16 months. id. at ¶ 65. The government agrees with the PSR calculation of the fine range of $5,500 to $55,000. id. at ¶ 81.

## LEGAL PRINCIPLES

5.      When determining the appropriate sentence, the district court should consider all the applicable factors set forth in Title 18, United States Code, Section 3553(a).   See United States v. Gall, 128 S. Ct. 586, 596 (2007). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). United States v. Rita, 127 S. Ct. 2456, 2463-65 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the kinds of sentences available; (4) the sentencing range established by the Sentencing Guidelines; (5) any related Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution to any victims.

6.      In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 542 U.S. 296 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory. Booker, 543 U.S. at 245. Nonetheless, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See Gall, 128 S. Ct. at 598 ("As a matter of administration and to

secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See United States v. Rita, 127 S. Ct. 2456, 2464 (2007). See also United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). In addition, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 543 U.S. at 264 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

7.      The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1). The Guidelines themselves thus seek to implement — in a fair and uniform way — the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall.   See Gall, 128 S. Ct. at 597.

**SENTENCING RECOMMENDATION**

8.      The Government submits that a sentence of 13 months of imprisonment, which is at the mid-range of the applicable guidelines range, constitutes a sentence that meets the sentencing

4

criteria set forth in 18 U.S.C. § 3553(a). First, the defendant's conduct in this case was extremely dangerous. The defendant possessed a loaded firearm while traveling through the streets of Washington, D.C. The toll that gun violence has taken on our community and communities around the country is well documented. This gun violence is also a fact that the defendant has experienced first-hand, having been both a victim of gun violence during an incident in 2023 where he was shot and another person was killed, and having previously been involved in an altercation at a cookout in which he is alleged to have discharged a firearm while approximately 100 people were in the area. PSR ¶ 33, 29 (p.12).[1] There is simply no justifiable reason for the defendant, a convicted felon, to be in possession of a firearm.

9.      At 24 years old, the defendant now has two felony firearms convictions (including the instant offense).[2] As mentioned supra, one of these felony firearms convictions involved the defendant discharging a firearm at members of an opposing group who are alleged to have fired toward the group of people with whom the defendant was standing. Id. at ¶ 33. The government is equally troubled by the defendant's history of failing to comply with court ordered conditions of release. The defendant's supervised release in the Superior Court matter was terminated unsuccessfully after numerous violations of his release conditions, including curfew violations, failure to attend grief counseling, interactive journaling-peer relationships and the victim impact programs. Defendant also incurred numerous positive drug tests. id.

10.      Unfortunately, the defendant's pattern of non-compliance with court ordered

---

[1] The final PSR appears to have duplicate paragraph numbers starting a page 9.

[2] Defendant also has an additional CPWL conviction referenced in paragraph 26 (p. 9 of the PSR), which the government will address during the sentencing hearing on April 30, 2026.

supervision has continued in this matter, despite having been given multiple opportunities by this Court to come into compliance. As detailed in the PSR, the defendant has consistently tested positive for various drugs throughout the period of his pretrial release, including positive results for marijuana, amphetamines, and fentanyl. Id. at ¶ 9. The defendant also attempted to have another person submit a drug test on his behalf. id. at ¶ 11. Finally, the defendant has made multiple unauthorized stops and been away from his residence in violation of his condition of home confinement. id. at ¶ 13. The government submits that the credible evidence presented at the hearing on violation held on April 16, 2026, demonstrated that, contrary to the defendant's claim that he had left his residence to assist his mother with her vehicle, he was on a basketball court inside a park. In fact, the GPS data from the defendant's monitoring device establishes that he was not located near the street where he claimed his mother's vehicle was located. Furthermore, his mother testified that the defendant was only with her assisting with the vehicle for approximately 45 minutes, but the GPS data establishes that he was away from his residence for over two hours. This pattern of behavior is indicative of an individual who is not amenable to court supervision, presents a continuing risk to reoffend, and therefore, presents a continued threat to the safety of the community.

11.     In addition to the defendant's criminal behavior, he does not appear to have a stable history of employment, nor has he attained vocational training or additional education to enhance his employability. These are also factors that the government submits increase the likelihood that the defendant will reoffend, thereby justifying a period of incarceration in order to protect the community, punish him for his criminal conduct, deter others from committing similar offenses, while still affording the defendant an opportunity at rehabilitation.

12.     The government submits that a sentence of 13 months serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a). The PSR states that sentencing data between 2020 and 2024 reveals that similarly charged offenders with the same offense level and criminal history category as the defendant who received a sentence of imprisonment, received a prison sentence averaging 9 months and a median sentence of 10 months. Id. at ℙ 85. The government submits that a sentence of 13 months is warranted in this matter because of the defendant's multiple convictions for possessing firearms, which also involve the discharge of a firearm, his pattern of non-compliance with court ordered supervision, and the other factors summarized above, all of which establish the defendant as a high risk to recidivate.

WHEREFORE, for the foregoing reasons, the United States respectfully recommends that: (i) the Court impose a sentence of 13 months of imprisonment; and (ii) impose a period of 3 years of supervised release.

Respectfully Submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

BY:     /s/ *Steven B. Wasserman*
STEVEN B. WASSERMAN
Assistant United States Attorney
D.C. Bar No. 453251
National Security Section
601 D Street, N.W., 5th Floor
Washington, D.C. 20530
(202) 252-7719
Steve.Wasserman@usdoj.gov

7

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the electronic case filing system, this 24th day of April 2026.


/s/ *Steven B. Wasserman*
STEVEN B. WASSERMAN
Assistant United States Attorney